NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 09-CV-90-JBC

PAUL ASHLEY TESTER PLAINTIFF

VS: **MEMORANDUM OPINION AND ORDER**

DR. JAMES HURM, et al. DEFENDANTS

**** **** **** **** ****

Paul Ashley Tester is a prisoner of the Vermont Department of Corrections, currently incarcerated in Beattyville, Kentucky, at the Lee Adjustment Center ("LAC"), which is managed by the Corrections Corporation of America. This is the second *pro se* civil rights action pursuant to 42 U.S.C. § 1983, which Tester has filed complaining of the conditions at the LAC. The court will dismiss this action for failure to state a claim.

Plaintiff's earlier action was *Tester v. Hurm*, Lex. Case No. 08-CV-466-JBC. After screening and while noting that it did not appear that the Plaintiff had exhausted the prison's administrative process prior to filing suit, the court dismissed the action summarily on several grounds. Seven weeks later, Tester submitted another Complaint with additional exhibits to the Clerk of the Court, and it was filed as an Amended Complaint in the same docket.

This court, however, found that the filing of that pleading was inappropriate in a closed case, and ordered the Clerk to set up a new case file, with the late-filed pleading as a Complaint initiating the instant 42 U.S.C. § 1983 action. In the same Order, the court informed Plaintiff that if he sought "to proceed further in the new case," he would need to

pay the $350.00 filing fee for a civil action or apply for pauper status. As he did in the first case, Plaintiff has returned the forms and has been granted permission to proceed *in forma pauperis* in a separate Order.

The newly filed Complaint is now before the court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997). In the court's screening of a *pro se* pleading, the document is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in a *pro se* litigant's complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

**CLAIMS**

Plaintiff complains that at the LAC (1) his care violates both the Eighth Amendment prohibition against cruel and unusual punishment and the Fourteenth Amendment guarantee of equal protection of the law; (2) the defendants have acted in a conspiracy which is compensable under 42 U.S.C. §§ 1985-1986; (3) he is dependent on pain medication, limited in the major life activity of sitting for long periods, and is not being accommodated, all in contravention of the Americans with Disabilities Act ("ADA"); (4) the defendants have failed to properly train and supervise subordinates; (5) he has suffered emotional distress; and (6) there have also been breaches of the Vermont Constitution and its statutes, 28 V.S.A. §§ 701, 801, which purportedly mandate that inmates be treated with

medical care "in accordance with the prevailing medical standards."

## THE PARTIES

Tester is the only person to sign the Complaint in this case. He has put the name "Andrew Pallito" on the same line as his in the caption of the case, however, and in the body of the Complaint, he has referred to Pallito, the Commissioner of the Vermont Department of Corrections ("DOC"), as a plaintiff. Nonetheless, the facts remain that Pallito has not signed the Complaint and that the plaintiff, a non-lawyer, cannot represent another party before the court. *See* Fed.R.Civ.P. 11(a). Therefore, Pallito will be dismissed as a co-plaintiff.

As the defendants, the plaintiff has named the following personnel at the LAC: (1) Dr. James Hurm; (2) the Medical Department Supervisor Tammy Osborne; (3) Warden Randal Stovall; (4) Assistant Warden David Frye; and (5) Assistant Warden Donna Stivers. Additionally, he names (6) the Corrections Corporation of America ("CCA"), which runs the LAC, and (7) Gingery Grider, who is allegedly the Medical Director of the CCA and located in Tennessee. Tester also alleges that "John and Jane Doe are proximally [sic] related individuals who are as yet unknown CCA designee's and/or state actors who have or have not also conspired to abrogate Plaintiff's protected rights."

## RELIEF REQUESTED

Plaintiff seeks a jury trial, appointment of counsel, and damages.

## ALLEGATIONS

Plaintiff's allegations may be summarized as follows:

Tester suffered an on-the-job injury in November of 2003 and was left with "chronic

neuropathic pain, chronic orthopedic, neck and shoulder pain, with chronic headaches." Prior to his incarceration and also while in prison in Vermont, he was effectively treated by physicians with medications, including Ultram.

Plaintiff arrived at LAC on June 20, 2007, with a prescription for Ultram, but upon an intake exam, Dr. Hurm informed him that he did not intend to honor that standard of care which was mandated by Vermont law, "28 V.S.A. § 801." Shortly thereafter, he was removed from the medication and excluded from prison programs and activities, based solely on his disabilities. When he raised the institution's obligations under the ADA, Dr. Hurm p told him that he did not have to comply with the ADA because "this is a prison not a medical facility."

Defendants Stovall, Frye, and Stivers are described as "the administrative heads" of the LAC, who run the day-to-day operation of the facility; and Osborne is the "administrative head" of the medical department there. They were notified of Plaintiff's complaints but were deliberately indifferent to them. They and Defendant Gingery Grider, at the CCA in Tennessee, failed to take steps to rectify the unconstitutional treatment, failed to direct that accommodations for his disabilities be provided, and failed to train and supervise subordinates. Moreover, the corporate defendant, the CCA, should be held financially responsible, as its policies set the tone of the place.

Plaintiff claims that he exhausted the administrative remedies at the prison prior to filing a lawsuit. Tester's exhibits to the Complaint in his previous case included copies of documents exchanged in two grievance proceedings about his health concerns, one in July of 2008, containing his demand for "a standard of medical care conforming to constitutional requirements," and the other in November of 2008, requesting to "have me back on my

ultram." With each grievance, there was a continuation page signed by Tester, who broadly claims that he has many physical limitations which, he believes, qualify him as a person with a disability. Additionally, in the continuation page of the second grievance, requesting the Ultram, he quotes the LAC doctor as follows: "Dr. Hurm told Grievant 'Ultram could only be given for five (5) days per FDA guidelines.'"

In response to the first of these, the July grievance, No. 08-7-9, wherein Plaintiff demanded "a standard of medical care conforming with constitutional requirements," Defendant Gingy Grider has written, "Will await review of more specific information before answering this grievance." The response to the second relevant grievance, the one initiated on November 3, 2008, about Ultram, was : "The grievance is non-grievable due to there being more than 5 days since the inmate initiated a sick call regarding the above-mentioned issue."

The plaintiff's exhibits include a full copy of the Kentucky DOC **Policies and Procedures ("CPP") 14.6**, **Inmate Grievance Procedures**.

## DISCUSSION

The plaintiff has again failed to state a claim upon which the court may grant relief. Had he completed the prison's administrative remedy program on each of his claims and attached the documents exchanged in that process to the new Complaint, perhaps then the documents could have filled in the factual basis of his claims and he would have stated a cognizable claim. As it is, however, the earlier deficiencies are again fatal to his cause.

Except for one issue in this case, there is again no demonstration that this plaintiff satisfied the exhaustion pre-requisite to filing a lawsuit, as required by Prison Litigation

Reform Act of 1995 ("PLRA"), effective on April 26, 1996. After the PLRA, federal law demands that "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Under the Kentucky DOC administrative procedures, there two processes within the prison remedy scheme. For most of prisoners' complaints, the general grievance procedures and forms require four steps in Kentucky's administrative process: (1) a grievance to the grievance coordinator, who will try to reach an informal resolution; (2) review by a committee; (3) an appeal to the warden; and (4) an appeal to the DOC Commissioner. Corrections Policies and Procedures ("CPP") 14.6 at 7-12, J. "Inmate Grievance Process."

There is a separate process for health care issues. CPP 14.6 at K, is titled "Health Care Grievance Process," and it provides a process with three, rather than four, steps: (1) a grievance to the grievance coordinator, who will try to reach an informal resolution; (2) review by the Health Care Grievance Committee; and (3) an appeal to the DOC Medical Director.

Further, "exhaustion" of a prisoner's administrative remedies means "proper exhaustion," *i.e.*, in conformity with the provisions of the administrative scheme, such as meeting any time deadlines. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006).

In the current action, the plaintiff claims exhaustion of only two of his claims. Initiated on July 3, 2008 and designated to be about a Health Care issue, only Grievance No. 08-7-9 was pursued beyond the prison walls. Upon Plaintiff's filing a July grievance demanding "a standard of medical care conforming with constitutional requirements,"

Defendant Grider filed a response at the highest level. Her July 28, 2008, response, *i.e.*, "Will await review of more specific information before answering this grievance," contains her signature over her CCA title, "Medical Director." This grievance reached the third and final level of medical care appeals but the plaintiff did not present underlying facts, just as he fails to define the facts in his complaint. Tester's grievance mentions no defendant, no "who" or "what" or "when" or "how."

Defendant Grider's full response reveals the problem a responder has when handed such a broad grievance that contains only generalizations:

> it is not possible to respond to this grievance in the present form due to the lack of specific information and the over abundance of accusations without specific examples. The following are examples of accusations found throughout the body of the grievance that are mentioned without specific reference to an event that could be investigated: retaliation, continuous deliberate indifference, utilization of privileged knowledge of the inmates vulnerabilities to manipulate him into circumstances whereby punitive action is exacted toward the inmate, wanton infliction of pain, rebuffs to humiliate, dealing with the inmate untruthfully and indifferently, pain and suffering inflicted upon the inmate. These phrases serve no purpose without specific examples.
>
> If there are specific examples regarding the above-mentioned accusations an addendum should be completed with specific information regarding each event. This will enable the writer to investigate the complaints and determine

if any appropriate action or lack of action exists in this particular grievance.

Response of Grider, apparently written on July 28, 2008. The final response of the Medical Director in the only grievance purportedly exhausted, Grievance No. 08-7-9, shows that the process was not properly exhausted, because Grider would have to "await review of more specific information before answering this grievance" for the reasons explained above.

Proper exhaustion would have required much more specificity than Tester furnished. Tester did not supply sufficient information for Grider or any of the defendants to respond on complaints about the standards of care. Similarly, in presenting his claims in the instant action, he has not supplied sufficient information to state a claim upon which the court may grant relief.

In grievance number 08-7-9, the plaintiff also failed to supply information which was sufficient to permit a reasoned response. This claim, too, was not properly exhausted, as the plaintiff waited past the 5-day deadline for grievances before making any complaint.

Exhaustion of administrative remedies is necessary for the preparation of a record. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980). In addition, the importance of the grievance system is "to alert prison officials to the problems." *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999) (partially abrogated in *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 920-21 (2007)).

As in the previous lawsuit, Tester fails to allege any factual basis for his ADA,[1] First

---

[1]An ADA plaintiff must show, among other things, that the discrimination was *intentionally* directed toward him or her in particular. *See Dillery,* 398 F.3d at 568 (" '[A]cts and omissions which have a disparate impact on disabled persons in general [are] not specific acts of intentional discrimination against [the plaintiff] in particular.' ") (citing *Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th

or Fourteenth Amendment claims, and other federal claims. The pleadings in this case have not set forth the factual basis of these claims in a manner that gives the defendants proper notice and does not require either the defendants or this court to "conjure up unpled allegations."

"A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits the facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976), *cert. denied*, 431 U.S. 914 (1977)). Therefore, dismissal without prejudice is also appropriate for Tester's remaining federal claims.

Finally, the trial court ordinarily has discretion as to whether to entertain pendent jurisdiction over State claims filed in connection with and arising out of the same facts as § 1983 actions. *Kitchen v. Chippewa Valley Schs.*, 825 F.2d 1004 (6th Cir. 1987). However, when a plaintiff has no federal cause of action, a district court may exercise its discretion to dismiss his pendent state law claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966); *Gregory v. Hunt, et al.*, 24 F.3d 781 (6th Cir. 1994). To the extent that the instant plaintiff has alleged that State claims are involved but the court has found that he has not stated a cognizable federal claim, the remaining claims, including any purported State claims, will be dismissed without prejudice as well.

---

Cir.1997)). *See also Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008). Additionally, Plaintiff's claims against any defendant individually fail as a matter of law. *See e.g. Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 808, n. 1 (6th Cir.1999); *see also Basat v. Caruso*, 2008 WL 4457828, * 5 (E.D.Mich. 2008) (slip op.).

Accordingly, the court finding that the plaintiff has failed to state a claim upon which relief may be granted and being otherwise advised, **IT IS ORDERED** as follows:

(1) Andrew Pallito is **DISMISSED** from this action;

(2) this action is **DISMISSED WITHOUT PREJUDICE**, *sua sponte*; and

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

Signed on May 20, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY